# INDIANAPOLIS ABATTOIR COMPANY *v* NEIDLINGER.

[No. 21,400.   Filed June 23, 1910.]

1. NEGLIGENCE.—*Complaint.*—A complaint for negligence must show (1) a duty owing from the defendant to the plaintiff, (2) a breach of such duty by defendant, and (3) proximately resulting injury to the plaintiff.   p. 403.

2. NEGLIGENCE.—*Breach of Duty.—How Shown.—Complaint.*—A complaint for negligence must state the facts from which a duty from defendant to plaintiff arises, and then the violation of such duty may be shown by a general allegation that defendant negligently performed, or failed to perform, such duty.   pp. 403, 406.

3. MASTER AND SERVANT.—*Safe Place.—Elevators.—Safety Devices.* —The owner of a factory is under no absolute statutory or common-law obligation to provide safety devices for freight elevators.   pp. 403, 404.

4. MASTER AND SERVANT.—*Elevators.—Use of.—Passengers.—Care.* —Employes using the freight elevators in a factory in performing their work are not passengers, and the master is required to use only ordinary care in regard to such elevators.   p. 404.

5. MASTER AND SERVANT.—*Machinery Used.—Care.*—Masters are not required to use the latest and most improved machinery, ordinary care in selecting and maintaining machinery and appliances being the test.   p. 404.

6. MASTER AND SERVANT.—*Freight Elevators.—Safety Devices.*— Factory owners are not required to maintain safety devices on freight elevators unless ordered to do so by the factory inspector (§8025 Burns 1908, Acts 1899 p. 231, §5).   p. 405.

7. MASTER AND SERVANT.—*Freight Elevators.—Safety Devices.— Failure to Furnish.—Complaint.*—A complaint against a factory owner on the ground of a failure to furnish safety devices for a freight elevator which plaintiff was required to use in his work, must show that such devices were required by the factory inspector.   p. 406.

8. MUNICIPAL CORPORATIONS. — *Ordinances.— Validity. — Control Over Freight Elevators.*—Neither §§8025, 8045 Burns 1908, Acts 1899 p. 231, §§5, 25, which do not authorize cities or towns to pass any ordinances, nor §8655 Burns 1908, cl. 23, Acts 1905 p. 219, §53, empowering cities to pass ordinances "to authorize and require the inspection and licensing of steam boilers and elevators, and to prohibit their use when unsafe or dangerous or when used without a license," authorizes the passage of an ordinance requiring that "every elevator car or platform, cable-hoisted, that runs on guides shall be provided with an approved safety device

which will prevent the car from falling in case the cables break or the machinery breaks or gets out of order." p. 406.

9. MUNICIPAL CORPORATIONS.—*Implied Powers.*—*Regulating Use of Freight Elevators.*—Cities have no implied powers to require the use of safety devices on freight elevators. p. 407.

10. MASTER AND SERVANT.—*Elevators.*—*Negligent Construction.*— *Time to Repair.*—*Complaint.*—A complaint alleging that the master "negligently constructed, erected and maintained an elevator or hoist in said factory," does not need to allege that defendant had knowledge of the defect a sufficient length of time before the servant's injury to repair such defect. p. 408.

11. MASTER AND SERVANT.—*Defective Machinery.*—*Notice.*—*Assumption of Risk.*—*Complaint.*—A complaint alleging that the plaintiff had "no knowledge of the unsafe and dangerous condition of said elevator," shows that the plaintiff had neither actual nor implied notice of the defect, and negatives the assumption of the risk thereof. p. 409.

12. MASTER AND SERVANT.—*Elevators.*—*Safety Devices.*—*Notice.*— *Contributory Negligence.*—*Complaint.*—A complaint alleging that the plaintiff in the performance of his duties used defendant's freight elevator, that he knew only how to stop and start it, that defendant negligently failed to provide it with a safety device, that defendant knew thereof and the plaintiff did not and that because thereof the cage fell, to plaintiff's injury, shows that plaintiff did not know of such defect, and that he was not guilty of contributory negligence. p. 410.

13. PLEADING.—*Motions to Make More Specific.*—*Joint.*—Where a complaint contained four paragraphs, a motion to require the plaintiff "to make his complaint more specific in each of the following respects," setting out four specifications, is joint, and subsequent language attempting to make it several does not change it. p. 410.

14. PLEADING.—*Motions.*—*Joint.*—A joint motion to make several paragraphs of the complaint more specific should be overruled unless the motion is well taken as to all. p. 410.

15. TRIAL.—*Instructions.*—*Weight of Evidence.*—*Number of Witnesses.*—An instruction that the weight of evidence, under certain circumstances, might be determined by the number of witnesses, should not be given. p. 411.

From Marion Circuit Court (15,385); *Charles Remster,* Judge.

Action by Christ Neidlinger against the Indianapolis Abattoir Company. From a judgment on a verdict for plaintiff for $10,000, defendant appeals. *Reversed.*

Vol. 174—26

*Elam, Fesler & Elam,* for appellant.

*William H. Ogborn. Bailey & Young* and *Henry N. Spaan,* for appellee.

MONKS, C. J.—Appellee brought this action to recover damages for personal injuries received while in the service of appellant, by reason of the falling of an elevator in its factory.

The cause was tried by a jury, and a general verdict returned in favor of appellee, and also answers to interrogatories submitted by the court at the request of the parties. Over a motion for judgment in its favor on the answers to the interrogatories, notwithstanding the general verdict, and a motion for a new trial, the court rendered judgment on the general verdict in favor of appellee.

It is first insisted by appellant that the court erred in overruling its demurrer to each paragraph of the complaint.

The complaint is in four paragraphs. The first alleges that appellant was engaged in the ''business of packing and wholesaling meats in its factory, and that it had constructed, erected and maintained an elevator or hoist in said factory, which ran in a shaft from the bottom of the building to the top thereof, was hoisted by a cable, and was used to haul meats, boxes and other commodities necessary to be hauled in said factory from one floor to another; that ever since the construction of said elevator, by permission, consent and knowledge of defendant, its employes in said factory went up and down on said elevator from one floor to another, as their duties and work required; that plaintiff knew nothing about the construction, machinery and appliances in and about said elevator, that all the knowledge he had in regard to it was how to stop and start it, as he had been instructed by defendant; that defendant had carelessly and negligently constructed and so maintained said elevator in this: that it had carelessly and negligently failed and refused to place safety devices on said elevator, whereby

the cab would be securely held in the event of accident to the rope, cable or hoisting machinery.'' The further averments of said paragraph describe the manner and extent of appellee's injury. They are to the effect that on the occasion of the accident he was on the hoist with certain goods, being taken from a lower to an upper floor, and the hoisting cable gave way and broke and the cage fell with appellee, because appellant had failed to place safety devices on the hoist that would securely hold it in case of such a break.

It is well settled that a complaint for negligence must allege facts showing a legal duty on the part of defendant to plaintiff, and that he negligently performed or failed 1. to perform such duty, and that the failure to discharge such duty was the proximate cause of the injury complained of. The rule is that facts must be alleged from which the law will imply the existence 2. of such duty. When the facts alleged show a legal duty owing by defendant to plaintiff, then a violation of such duty may be shown by a general allegation that he negligently performed or failed to perform such duty. *Pittsburgh, etc., R. Co.* v. *Peck* (1905), 165 Ind. 537, and cases cited; *Chicago, etc., R. Co.* v. *Barnes* (1905), 164 Ind. 143, and cases cited; *Chicago, etc., R. Co.* v. *Barker* (1908), 169 Ind. 670, 17 L. R. A. (N. S.) 542, and cases cited; *Kentucky, etc., R. Co.* v. *Moran* (1907), 169 Ind. 18, and cases cited; *Chicago, etc., R. Co.* v. *Lain* (1908), 170 Ind. 84, and cases cited.

Said first paragraph describes a freight elevator or hoist in a meat packing establishment, and the only complaint made is that there were no safety devices that would 3. prevent a fall if the cable broke. It is settled law that there is no general obligation, either under the common law or by statute, to place safety devices upon such an elevator. In *Sievers* v. *Peters, etc., Lumber Co.* (1898), 151 Ind. 642, this court said on page 650: ''The rule is

that the owners are under no legal obligation to put safety appliances upon elevators not intended to carry passengers. *Hall* v. *Murdock* [1897], 114 Mich. 233, 72 N. W. 150; *Kern* v. *De Castro, etc., Refining Co.* [1890], 125 N. Y. 50, 25 N. E. 1071; *Hoehmann* v. *Moss Engraving Co.* [1893], 4 Misc. 160, 23 N. Y. Supp. 787.''

If, with the knowledge and consent of appellant, its employes ''rode up and down on said elevator from one floor to another as their duties and work required,'' as alleged in said paragraph, they were not, in so doing, passengers, but employes, and the degree of care required of appellant was that of an employer to an employe, which is ordinary care. *Sievers* v. *Peters, etc., Lumber Co., supra; McDonough* v. *Lampher* (1893), 55 Minn. 501, 57 N. W. 152, 43 Am. St. 541. See, also, *Walsh* v. *Cullen* (1908), 235 Ill. 91, 85 N. E. 223, 18 L. R. A. (N. S.) 911 and note; *Indianapolis, etc., Transit Co.* v. *Foreman* (1904), 162 Ind. 85, 92, 102 Am. St. 185, and cases cited.

As the employe while so riding upon such elevator is not a passenger but an employe, it cannot be said from this fact alone that it is the legal duty of the employer to equip it with a safety device in the absence of a statute requiring it, even though it is so used by the employes for their convenience and in the performance of their work. *Sievers* v. *Peters, etc., Lumber Co., supra; Hoehmann* v. *Moss Engraving Co., supra.*

It is not the duty of the employer to furnish the latest and most improved machinery, but he is only required to exercise ordinary care in selecting and maintaining machinery and appliances. *Lake Shore, etc., R. Co.* v. *McCormick* (1881), 74 Ind. 440, 446, and cases cited; *Indiana Car Co.* v. *Parker* (1885), 100 Ind. 181, 187, and cases cited; *Hoehmann* v. *Moss Engraving Co., supra.*

As was said in the case of *Lake Shore, etc., R. Co.* v. *McCormick, supra,* at page 446: ''Neither companies or individuals are bound, as between themselves and their ser-

vants, to discard and throw away their implements or machinery upon the discovery of every new invention which may be thought or claimed to be better than those they have in use; but if they take ordinary care and exercise ordinary prudence to keep their implements or machinery in sound repair, so that harm does not result to the servant for the want of such sound condition of the implements or machinery used, then such individuals or companies will not be responsible to servants for any injury which may occur to them in the use of such implements or machinery.''

The only statute concerning safety devices for elevators in factories is section five of the factory act of 1899 (Acts 1899 p. 231, §8025 Burns 1908). This section how-

6. ever, imposes no absolute duty to provide elevators in factories with safety devices, but only provides that elevators in factories shall be equipped "with proper safety devices whereby the cabs or cars will be securely held in event of accident to the cable or rope or hoisting machinery, or from any similar cause," when they are required by the chief inspector appointed under said act. *Reliance Mfg. Co.* v. *Langley* (1908), 41 Ind. App. 175; *Boehm* v. *Mace* (1892), 18 N. Y. Supp. 106.

In the case of *Reliance Mfg. Co.* v. *Langley, supra,* at page 180, the court said in regard to §8025, *supra:* "If the legislature had intended arbitrarily to impose upon all owners, lessees or agents the duty of maintaining safety devices on all elevators, it would have said so. * * * The act seems to have been carefully drawn to cover the subjects intended. The explanation is to be found in the fact that prior to this enactment it had been frequently determined in the courts of this State and other states that on some elevators and hoists, under certain conditions and circumstances safety devices were neither practical nor necessary. * * * It is proper to presume that the legislature understood the obligations of the parties, as determined in these decisions, when it passed the act in question,

and recognized that the rights and interests of all parties might best be protected if left in the hands of the factory inspector. The legislature did not deem it best arbitrarily to provide that the shafts should be enclosed or that automatic traps or doors should be maintained. We can see no reason why the legislature should depart from this rule with reference to safety devices, and, in the absence of any words expressing such intention, it would be traveling in the realms of imagination to hold that the legislature intended to impose the duty of providing safety devices for all elevators, without regard to their character, practicability or necessity.''

No facts are alleged in said complaint showing that said chief inspector ever required that said freight elevator in appellant's factory be equipped with any safety device, or that he made any requirements in regard to said elevator. It is evident under the authorities cited that said first paragraph is insufficient, because it does not show by the averment of proper facts that appellant owed a duty to appellee to place a ''safety device upon said elevator.''

If said paragraph disclosed such duty, then, under a well-settled rule, a violation or breach thereof might be shown by a general allegation of negligence. A general allegation of negligence however, is not sufficient to show both a duty and a violation thereof. *Chicago, etc., R. Co.* v. *Lain, supra; Pittsburgh, etc., R. Co.* v. *Peck, supra.*

The second paragraph of the complaint is substantially the same as the first, except that an ordinance of the city of Indianapolis, which provided that ''every elevator car or platform, cable-hoisted, that runs on guides shall be provided with an approved safety device which will prevent the car from falling in case the cables break or the machinery breaks or gets out of order''

(Laws and Ordinances, City of Indianapolis [1904] §779), was made a part thereof.

It is evident, therefore, that the sufficiency of said second paragraph depends upon whether said ordinance set forth therein is valid.    Appellee insists that said "ordinance is within the powers vested in the city by clause twenty-three of §8655 Burns 1908, Acts 1905 p. 219, §53, and §§8025, 8045 Burns 1908, Acts 1899 p. 231, §§5, 25.

The two sections last cited are a part of the factory act of 1899, and do not purport to give any authority to cities or towns to pass ordinances on any subject.    Said clause twenty-three of §8655, *supra,* only empowers cities to pass ordinances "to authorize and require the inspection and licensing of steam boilers and elevators, and to prohibit their use when unsafe or dangerous or when used without license."    It is not alleged in said second paragraph that there was in force any ordinance authorizing or requiring the inspecting of elevators or prohibiting their use when unsafe or dangerous or when used without a license, nor is there any allegation that said elevator was used without a license, if there was such an ordinance.    The ordinance pleaded does not purport to authorize or require the inspecting and licensing of elevators, or to prohibit their use if unsafe or dangerous, or when used without a license.    It is evident that the ordinance made a part of said paragraph is not authorized by said clause twenty-three of §8655, *supra.*

Nor is it authorized by the implied powers of said city, for the reason that it cannot be said that it is essential to the accomplishment of the purposes of its creation 9. or its continued existence that such power be implied.    *City of Elkhart* v. *Lipschitz* (1905), 164 Ind. 671, and cases cited; *Pittsburgh, etc., R. Co.* v. *Town of Crown Point* (1896), 146 Ind. 421, 35 L. R. A. 684; *Bogue* v. *Bennett* (1901), 156 Ind. 478, 83 Am. St. 212; *City of*

*Delphi* v. *Hamling* (1909), 172 Ind. 645; *State* v. *Robertson* (1893), 45 La. Ann. 954, 13 South. 164, 40 Am. St. 272; *In re Pennsylvania R. Co.* (1906), 213 Pa. St. 373, 62 Atl. 986, 3 L. R. A. (N. S.) 140, 5 Am. & Eng. Ann. Cas. 299 and notes; *Thrower* v. *City of Atlanta* (1905), 124 Ga. 1, 52 S. E. 76, 110 Am. St. 147, 1 L. R. A. (N. S.) 382 and note; *People* v. *Armstrong* (1889), 73 Mich. 288, 41 N. W. 275, 2 L. R. A. 721, 16 Am. St. 578.

The third paragraph is substantially the same as the first, except that the allegations in regard to appellant's negligence in failing to provide safety devices are omitted, and appellant's negligence and appellee's want of knowledge are alleged as follows: "That the defendant had carelessly and negligently constructed and maintained said elevator in this: that said elevator in all its parts, including ropes, cable, cage, wheels, cogs, pulleys, shifts, drum, gearing and shafting was decayed, rotten, cracked, worn and broken, and was out of plumb, untrue, dangerous and unsafe, all of which was well known to defendant, or could have been known by defendant by the exercise of ordinary care and diligence; that plaintiff had no knowledge of the unsafe and dangerous condition of said elevator; that on said day this plaintff was  *  *  *  upon said elevator in the proper discharge of his duties,  *  *  * hauling certain goods from the lower to the upper floor on said elevator in said factory, and while it was ascending, and without any warning, knowledge, or fault of plaintiff the machinery and hoisting cable of said elevator, by reason of the worn, cracked, broken, decayed and untrue condition thereof, broke and gave way and fell with great force to the bottom of said shaft, together with this plaintiff and said goods."

The fourth paragraph of the complaint is the same as the third, except that it further alleges the negligent failure of appellant to inspect said elevator.

It is urged by appellant that the third paragraph is in-

sufficient, for the reason that it does not allege that appellant "had notice, express or implied, of any cracked and worn condition of any part of the hoist for any length of time before the injury complained of, or that after such knowledge there was a reasonable time to make repairs before the injury." Citing *Kentucky, etc., R. Co.* v. *Moran, supra; Malott* v. *Sample* (1905), 164 Ind. 645.

It was held in the cases cited, that, in an action for an injury caused by a failure to repair machinery, to show negligence on the part of the master facts must be alleged showing actual or constructive knowledge of the defect complained of on the part of the master for a sufficient length of time before the injury to have repaired it or at least to have notified the servant of the danger.

The third paragraph however, does not charge negligence in failing to repair, but that defendant had "negligently constructed, erected and maintained an elevator or hoist in said factory," etc. If appellant negligently constructed said elevator as said paragraph alleges, it was not necessary to allege facts showing that appellant had knowledge thereof a sufficient length of time to have repaired it before the injury. *Indiana, etc., R. Co.* v. *Snyder* (1895), 140 Ind. 647; *Kentucky, etc., R. Co.* v. *Moran, supra.*

It is insisted by appellant that said third and fourth paragraphs do not "contain sufficient allegations to show that appellee did not assume the risk resulting in his injury." It is alleged in each of said paragraphs that on the day of the accident and prior thereto appellee "knew nothing about the construction of or the machinery and appliances of said elevator, and that all he knew about it was to stop and start it as he had been instructed by said defendant;" and after alleging appellant's knowledge of the defects of said elevator, it is alleged that plaintiff had "no knowledge of the unsafe and dangerous condition of said elevator."

These averments rebut not only actual but implied knowl-

edge on the part of appellee of said defects, and sufficiently allege that he did not assume the risk thereof. *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297, 299, 300, and cases cited.

We cannot say that the special facts alleged in said paragraph overcome said allegations in regard to appellee's want of knowledge of said defects and dangers, or that the special facts alleged show that appellee was guilty of contributory negligence. The court did not err in overruling the demurrer to said third and fourth paragraphs of complaint.

Appellant filed a motion to require appellee "to make his complaint more specific in each of the following respects," etc., setting out four specifications. Two refer to all the paragraphs, one to the first and second, and another to the third and fourth paragraphs of the complaint. The motion was overruled generally and exception taken. The motion was joint as to all the paragraphs of the complaint, and its character as such is not changed by subsequent language so as to make it several as to each paragraph, nor does the fact that appellant mentions specially two or more paragraphs in separate specifications make it any the less a joint motion as to all of said paragraphs. *Maynard* v. *Waidlich* (1901), 156 Ind. 562, 565; *Round* v. *State* (1898), 152 Ind. 39, 42; *Cooper* v. *Hayes* (1884), 96 Ind. 386, 390; *Stanford* v. *Davis* (1876), 54 Ind. 45, 47.

While it may be that some of the paragraphs of the complaint were open to the objections urged, the court did not err in overruling said motion. *Board, etc.,* v. *Nichols* (1894), 139 Ind. 611, 621; *Baum* v. *Thoms* (1898), 150 Ind. 378, 390, 65 Am. St. 368; *Ellison* v. *Branstrator* (1910), 45 Ind. App. 307; *Maynard* v. *Waidlich, supra.*

Complaint is made of instruction thirty, given by the court to the jury, to the effect that the weight of the evi-

dence on any matter, under certain circumstances, might be determined to be on the side having the greater number of witnesses. This instruction is substantially the same as instruction nineteen, condemned by this court in *Warren Construction Co.* v. *Powell* (1909), 173 Ind. 207. Upon the authority of that case and for the same reasons we hold that the court erred in giving said instruction thirty.

Judgment reversed, with instructions to sustain appellant's motion for a new trial, to sustain the demurrer to the first and second paragraphs of the complaint, and for further proceedings not inconsistent with this opinion.