53 P.(2d) 646

### HENDRICKSON v. BROOKS.

No. 4139.

Supreme Court of New Mexico.

Jan. 9, 1936.

George C. Taylor, of Albuquerque, for appellant.

Mechem & Hannett, of Albuquerque, S. Harrison White, of Denver, Colo., and Fred Nicholas, of Los Lunas, for appellee.

HUDSPETH, Justice.

Claud A. Hendrickson, appellee, sued Bert Brooks, appellant, for damages, based upon personal injuries sustained when his automobile left the highway and turned over. The jury returned a verdict in favor of appellee for $15,000 which by remittitur was reduced to $10,000, for which sum judgment was rendered. This appeal followed.

The accident occurred about 8 p. m. on the 31st of August, 1933, in the settlement of Polvadera, ten miles north of Socorro on the Albuquerque-El Paso Highway, and was alleged to have been caused by a dip or ditch cut across the highway at a right angle. It appears that another dip of concrete construction was made by the builders of the road near by, but it proved incapable of carrying off the flood waters satisfactorily, and the dip or drainage ditch in question was cut by the removal of the oil surface and base to a depth estimated by different witnesses at from one to two and one-half feet and for a distance estimated at from 10 feet to 42 feet.

No concrete floor was laid in this dip, but the heavy traffic of this main North-South state highway passed over it without recorded injury to man or machine for many months before appellant came into the community for the purpose of "oil surfacing" eleven miles of new highway construction, reaching from a point some 700 yards north of the scene of the accident to the town of Socorro and roughly paralleling the old highway. This new highway had been used by the public for some time before appellant put up barricades and the usual warning signs to keep the traffic off the new highway upon which he was working, but it was not shown that it had been accepted by the state and formally opened to the traveling public.

Appellee testified that he read the word "detour" on the sign board put up by appellant, and was driving at about 35 miles per hour when he approached the unpaved dip or ditch, and that he remembered nothing else until he was picked up some 150 feet further south. One of appellee's witnesses testified that the tires on appellee's car left marks in the middle of the highway, after crossing the dip for a distance of eight feet "showing that the wheels were dragged," and that the car left the highway some 75

feet south of the dip, passed over a four-wire fence and was upturned near the door of a cottage.

It is admitted that appellant had a right to keep the traffic off the new highway, and that it was not a part of his duties to maintain or repair the old highway where the accident occurred—the state highway department having a maintenance crew on that stretch of the old highway continuously before and during all the time appellant's work was in progress on the new highway and after he had completed his contract. There was evidence that this old highway was to be maintained permanently for the benefit of the residents of Polvadera and Lemitar, another village through which it passed.

Appellee maintains it was the duty of appellant to give warning by road signs or otherwise to the traveling public of the dip or ditch where the accident occurred. His theory of the case may be gathered from an instruction given to the jury at his request: "No. 3. You are instructed that a contractor, employed to build or repair a public highway, has the right to block off the highway for the purpose of repairing or constructing an additional highway, and to compel the public to use such other roads and detours available to travel around the portion of the highway under repair or construction, and while it was not the duty of the defendant to provide a safe road or highway at the point where the accident occurred, yet if the appearance of said road, after it left the main highway, was such as to induce a reasonably careful and prudent person to believe that the road was in a condition such as would be safe to drive a car on the same at the rate of speed at which plaintiff was driving at the time the accident occurred and that the defendant, or his agents, in charge of said road work, knew, or, with the exercise of reasonable diligence, could have known of the condition of said road, as a reasonable person should have known, and the dangers thereof, if there were such dangers, and could have by signs or other means warned the traveling public of such dangers, if they were in existence; then the defendant was negligent for not having placed signs or other indications of warning on said road which would have been sufficient to warn the traveling public of the dangers."

Appellee further maintains that even if the state highway department officials and employees were negligent in failing to put up warning signs at the dip or ditch, which it is alleged caused the accident, such negligence would not excuse appellant. Gilbert v. New Mexico Const. Co., 39 N.M. 216, 44 P.(2d) 489.

Appellant urges, among other grounds for reversal, that the physical facts contradict appellee and show that he was plainly negligent in that he must have been traveling at an extraordinarily fast rate of speed—a speed inconsistent with due care—that a road which can be ne-

gotiated by all but most reckless and careless automobile drivers is safe. Esponette v. Wiseman, 130 Me. 297, 155 A. 650.

But in our view of the case, the only question which need be considered is whether or not appellant owed a duty to the traveling public to erect and maintain caution signs on the old highway at the point where the accident occurred. Or, in other words, whether his neglect to put up and maintain such signs subjects him to liability for the injuries suffered by appellee.

In the case of Romney v. Lynch, 58 Utah, 479, 199 P. 974, 975, the Supreme Court of that state, speaking through Mr. Chief Justice Corfman, said:

"As has been seen, in the present case the accident is alleged to have occurred on a public road which was under the management and control of the county commissioners of Davis county, and with which the defendant had nothing to do under his contract, or otherwise, unless it be held, as a matter of law, that defendant's directions to the traveling public to take the Davis county road as a detour burdened him with the duty of maintaining it in a reasonably safe condition for travel or that by warning signs or signals he should have apprised the public of its dangerous defects.

"Under the provisions of Comp.Laws Utah 1917, §§ 2800, 5848, subd. 15, the Davis county road, on which the accident of which plaintiff complains occurred, is deemed a public highway. As such it was under the direction and supervision of the county commissioners of Davis county, and it was the duty of said commissioners to keep the road clear of obstructions and in good repair. Section 2823, as amended by Laws Utah 1919, c. 55.

"It is therefore difficult to conceive upon what theory the defendant might be held to respond in damages for failure to keep in good repair the public road or highway in question. His contract with the State Road Commission was with respect to a state road, the Clearfield-Sunset Highway, and no other. It is conceded, as it must be, that the defendant had the right to close that highway for the purpose of making repairs or resurfacing it. True it was, defendant's contract with the State Road Commission provided that in the event of his closing the Clearfield-Sunset Highway a reasonable detour should be maintained and kept in good condition under the direction of the State Engineer at defendant's expense. That he did not do. What he did do after closing the state road was to give notice or direction to the traveling public that it might detour or pass over the Davis county road, which was under the direction and supervision of the county commissioners of that county. The Davis county road was open to the public, and all who traveled or used it had

the right to assume that it was in a reasonably safe condition. In and of itself the closing of the Clearfield-Sunset Highway had no causal connection with the plaintiff's accident on the Davis county road. That passageway was open and available for travel. The defendant and the plaintiff alike had the right to presume it was properly maintained and reasonably safe. The defendant's contractual relations with respect to the highways were wholly connected with the Clearfield-Sunset Highway. If any legal duty, express or implied, under the facts pleaded in plaintiff's complaint, rested upon the defendant to maintain the Davis county road reasonably safe for travel, then we have indeed entered upon a new field of personal liabilities for judicial investigation and determination.

"If there be any principles of law or justice under which the defendant should have been held to respond in damages to the plaintiff for the defective condition of the Davis county road, by reason of which plaintiff's injuries were sustained, counsel in their brief have signally failed to point them out, and, unaided, we ourselves have been unable to conceive of such.

"Let it be conceded, as was contention made by the plaintiff, that defendant by his acts in closing the Clearfield-Sunset Highway and directing travel to the Davis county road thereby adopted the latter as a detour, then as a matter of law we think defendant had a right to use it for that purpose without assuming the responsibilities that rested upon the county commissioners of Davis county of properly maintaining it. If the public highways of this state are open and presumed to be reasonably safe for the legitimate use of all citizens alike, then what good reason can be assigned why a contractor may not properly and rightfully avail himself of their use as a detour for the traveling public while he is engaged in the performance of work, such as the defendant here was undertaking to do, without having visited upon him the results occasioned by the negligence of the officials whose plain statutory duty it was to properly maintain them? We think the facts stated in plaintiff's complaint were insufficient to constitute a cause of action against the defendant, and the judgment of the trial court should be affirmed."

Appellee points out that in the case at bar appellant knew or should have known of the dangerous condition of the road at the point where the accident occurred, while the Utah court held the contractor, as well as the public, had a right to assume that the road was in a reasonably safe condition.

We are not impressed with this distinction. The highway department had known of the condition of the road at the point of the accident for many months, and its maintenance crew, which passed over the road frequently, had done noth-

ing about it. Appellee's position is in effect that appellant was obligated to maintain a higher standard of "road markings" or highway signs over this old highway than that maintained by the state's officials.

Appellant had neither power nor authority to abate the condition which it is alleged made travel on the old highway dangerous. It is not even suggested that it was his duty to control the conduct of the state highway department, or its employees, with reference to the standard of maintenance of the old highway. If it was not a part of appellant's duty to maintain the old highway, so as to render it reasonably safe for ordinary travel, we are unable to see why he should be subjected to liability for failure to put up warning signs adequate to enable the traveling public to avoid injury.

We therefore hold that a contractor working upon a highway, who has a right to and does divert traffic onto another state highway being maintained by the state highway commission, is not liable for injuries received in accidents due to defects in said state highway.

The judgment is reversed, and the cause remanded to the district court, with direction to dismiss the complaint. It is so ordered.

SADLER, C. J., and BICKLEY, BRICE, and ZINN, JJ., concur.